UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAMON STEPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-04574-JMS-TAB |
| ) | |
| INDIANAPOLIS PUBLIC TRANSPORTATION ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTIONS TO ENFORCE SETTLEMENT AND
MOTIONS TO MAINTAIN DOCUMENTS UNDER SEAL**

**I.  Introduction**

Plaintiff Damon Stepp and Defendant Indianapolis Public Transportation Corporation seemingly reached a settlement agreement at a telephonic settlement conference with the undersigned magistrate judge on October 14, 2020.  [Filing No. 33.]  However, both parties have now filed separate motions to enforce competing versions of the purported agreement.  [Filing No. 37; Filing No. 41.]  In addition, the parties seek to maintain the contents of this asserted settlement agreement under seal.  [Filing No. 39; Filing No. 42.]

While the parties—and the Court—thought a settlement had been reached at the settlement conference, the devil is in the details.  Unfortunately, there is no consensus on the details of this settlement, and the disputed terms are material to the purported agreement.  Therefore, there is no agreement that the Court can enforce.  Accordingly, for the reasons stated below, all pending motions, including those to seal documents containing the purported settlement terms, are denied.

**II.     Background**

On October 14, 2020, the undersigned magistrate judge held a telephonic settlement conference attended by both parties and their respective counsel.  [Filing No. 33.]  The Court assisted the parties in reaching a purported agreement on the material terms of a settlement.  No settlement agreement was signed at this telephonic conference.  However, after reviewing what appeared to be the terms of the settlement with the parties and their counsel, the magistrate judge directed Defendant's counsel to send an email to Plaintiff's counsel confirming the settlement terms, and to follow up that email with a proposed settlement agreement for Plaintiff's review.  The Court then issued an order noting that the case settled, vacating all deadlines, and giving the parties 45 days to file a stipulation of dismissal.  [Filing No. 33.]

On November 24, 2020, Plaintiff informed the Court during a telephonic status conference that he disputed that a settlement was reached.  [Filing No. 36.]  As that conference made clear, and as supported by the subsequent briefing on the motions to enforce, Plaintiff had a change of heart with respect to his agreement to resign his employment as a part of the settlement.  The Court ordered the parties to either file a stipulation of dismissal or a notice of the need to reset case deadlines, or for Defendant to file a motion to enforce the settlement agreement, by November 30.  [Filing No. 36.]  On November 30, 2020, Defendant filed its motion to enforce the settlement agreement.  [Filing No. 37.]  In addition, Defendant simultaneously filed a motion to maintain documents containing the terms of the purported agreement under seal.  [Filing No. 39.]  A few days later, Plaintiff filed his own motion, now agreeing that a settlement was reached but seeking to have the Court enforce an agreement restricted to only a limited number of terms.  [Filing No. 41.]  He also filed a motion to maintain

under seal both his motion and exhibits in support. [Filing No. 42.] The Court now addresses these four pending motions.

**III.   Discussion**

Both parties to this matter seek to have the Court enforce the purported settlement that resulted from the October 14 settlement conference. [Filing No. 39; Filing No. 41]. "Normally, a motion to enforce a settlement agreement will be treated as a motion to enforce any other kind of contract." *Cornell v. Delco Electronics Corp.*, 103 F. Supp. 2d 1116, 1120 (S.D. Ind. 2000). A district court's authority includes the power to enforce a settlement agreement over a case pending before it. *See, e.g., Tinsley v. IAM Sports & Entertainment, Inc.*, No. 1:17-cv-2780-WTL-TAB, 2018 WL 3126023, at *2 (S.D. Ind. June 26, 2018) ("A district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it. An agreement to settle claims in a federal court is enforceable just like any other contract. State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements." (Internal citations, quotation marks, and brackets omitted)).

  A. <u>Motions to Seal Settlement Agreement and Exhibits</u>

The Court first addresses the parties' motions to file and maintain the settlement agreement and documents referencing its contents under seal. [Filing Nos. 39, 42.] Both parties seek to maintain exhibits [Filing No. 38; Filing No. 38-1; Filing No. 41-1] containing the terms of the agreement confidential. In addition, Plaintiff seeks to maintain his motion to enforce the settlement agreement [Filing No. 41] under seal, as it restates his proposed version of the agreement. [Filing No. 42.]

While the Court recognizes the confidential nature of settlement agreements, the Court cannot properly evaluate an agreement unless it knows all the terms. *See, e.g., Goesel v. Boley*

*Int'l*, 738 F.3d 831, 833-34 (7th Cir. 2013) ("[M]ost settlement agreements never show up in a judicial record and so are not subject to the right of public access. . . . [F]or the most part settlement terms are of potential public interest only when judicial approval of the terms is required, or they become an issue in a subsequent lawsuit, or the settlement is sought to be enforced."); *Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002) ("The public has an interest in knowing what terms of a settlement a federal judge would approve[.]"); *Herrnreiter v. Chicago Hous. Auth.*, 281 F.3d 634, 636 (7th Cir. 2002) ("A settlement agreement is a contract, and when parties to a contract ask a court to interpret and enforce their agreement, the contract enters the record of the case and thus becomes available to the public, unless it contains information such as trade secrets that may legitimately be kept confidential."); *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) ("Calling a settlement confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judgment to close proceedings if a dispute erupted about payment (or termination)."); *Adkins v. Walgreen Co.*, No. 1:14-cv-1593-TWP-TAB, 2015 WL 11144500 (S.D. Ind. Aug. 7, 2015) (denying joint motion to file settlement agreement under seal). *See also* Order at 2, *Burrus v. Chinsky Restaurant Group, Inc.*, No. 1:19-cv-00999-TAB-RLY (S.D. Ind. Nov. 4, 2019), ECF No. 45 ("The Court cannot properly evaluate or determine whether a settlement is fair, reasonable, and adequate unless it knows all the terms.  Moreover, while settlement agreements typically never show up in a judicial record, when a settlement is sought to be enforced by the Court, the presumption of a right of public access applies, and the public has a right to know the terms of a settlement that a judge approves."). *Cf. Atlanta Gas Light Co. v. Navigators Ins. Co.*, No. 1:20-cv-02441-JPH-TAB, 2020 WL 7319059, at *2-3 (S.D. Ind. Dec. 11, 2020) (granting motion to

seal immaterial portions of settlement agreement but not to maintain under seal the portions of the exhibits subject to the Court's interpretation).

Thus, because the Court cannot properly evaluate the settlement agreement sought to be enforced without knowing its terms, and because the entirety of the exhibits and motions filed by the parties memorializing the purported agreement are necessary for the Court's review, both parties' motions to maintain these documents under seal are denied. The Clerk is directed to unseal Filing Nos. 38, 38-1, 41, 41-1 and all attachments after 21 days absent a motion to reconsider, appeal, or further Court order.

B.  Motions to Enforce Settlement Agreement

The main issue presented by these motions is whether an agreement even exists and, if so, whether it should be enforced. *See, e.g., Smith v. Peterson*, No. 1-19-CV-04671-SEB-TAB, 2020 WL 6701284, at *2 (S.D. Ind. Nov. 10, 2020) ("A federal court's authority over a case pending before it includes authority to enforce a settlement agreement that the parties have executed but not satisfied. A court must first determine as a matter of law whether an agreement exists. The court must then determine, as a matter of discretion, whether the agreement should be enforced." (Internal citations and quotation marks omitted)).

While both parties now seek enforcement of a purported agreement, their recitations of the agreement reached during the October 14 settlement conference are vastly different. [Filing No. 38; Filing No. 41]. Defendant's proposed settlement agreement contains many terms that were not agreed upon or even discussed with Plaintiff at the conference. [Filing No. 38.] For instance, Defendant's proposal includes the following provisions that were never discussed or agreed to: (1) Defendant denies all of the complaint allegations, and it is specifically understood

5

that the allegations in the complaint are disputed;[1] (2) Plaintiff will notify Defendant within five days after accepting employment elsewhere and will notify Defendant when he will begin to receive health insurance benefits; (3) Plaintiff will hold Defendant harmless for any amount due to any taxing authority; (4) a waiver of any term in the settlement does not amount to a waiver of any other settlement term; (5) the settlement does not constitute an admission of liability; (6) Plaintiff will not disparage any past, present, or future employee, board member, or partner of Defendant; and (7) the agreement shall be enforced under Indiana law.[2]  [Filing No. 38.]

Conversely, Plaintiff's proposed settlement agreement conveniently ignores the fact that not only did Plaintiff agree to resign his employment, he agreed not to seek future employment with Defendant. Moreover, Plaintiff's proposed terms of settlement make no mention of a release of claims against Defendant or dismissing this lawsuit with prejudice. [Filing No. 41, at ECF p. 2-3.] It is beyond dispute that having Plaintiff resign his employment and never work for Defendant again was a material term of any agreement. Defendant wanted a clean break, consisting of Plaintiff cleaning out his locker within 24 hours (which he did), dismissing the lawsuit, and releasing all claims against Defendant. Therefore, Plaintiff's proposed settlement agreement is not enforceable.

---

[1] This purported term of the settlement is particularly curious given that Defendant's answer admits many of Plaintiff's complaint allegations. [Filing No. 14.]

[2] Defendant submitted a declaration from Jeffrey Brown, who attended the settlement conference on behalf of Defendant, in which Brown avers his belief that Defendant's proposed settlement agreement reflects the agreement reached at the conference. [Filing No. 38-1.] This representation is troubling given the multitude of provisions in Defendant's proposed settlement agreement that were not discussed at the conference. The obvious intention of Brown's declaration is to support Defendant's argument that Plaintiff agreed to resign and not reapply for employment. However, Brown's declaration goes far beyond this.

The more interesting question is whether Defendant's proposed settlement agreement is enforceable. The Court agrees with Defendant that the purported agreement required Plaintiff to resign and not seek future employment with Defendant. But Defendant does not stop there. As set forth above, Defendant has included a slew of additional settlement terms that the parties never discussed. It might be argued, as Defendant suggests, that these additional terms are standard terms of settlement in a case alleging employment discrimination.[3] [Filing No. 43, at ECF p. 2.] However, such terms cannot be considered part of the settlement if they were never discussed with the opposing party. *See, e.g., Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 998 (7th Cir. 2001) ("Although a contract can be formed even though the precise language is not worked out and put into writing until sometime later, there must at least be some agreement as to what it will say." (Internal citation omitted)). *Cf. Beverly v. Abbott Labs.*, 817 F.3d 328, 334 (7th Cir. 2016) ("A settlement agreement may be enforceable despite the omission of certain terms so long as those terms are not material.") Review of both purported agreements reveals blatant material differences.

The Court could attempt to decide for itself what every material term of the settlement was, draft language reflecting those terms, and thrust them upon the parties. Doing so in this instance seems unwise for two reasons. First there exists a vast disagreement between the terms of settlement the parties have put before the Court. Second, both parties have made it clear that unless the Court agrees to enforce their version of the agreement in full, then no agreement was reached.

---

[3] Defendant focuses its arguments in this regard on Plaintiff's right to seek future employment with Defendant and the right to bring a legal action if future employment is denied. Even if waiving the right to redress is an implied term of agreeing not to seek future employment, the additional settlement terms Defendant proposes go well beyond this realm.

7

It is worth acknowledging that the settlement conference occurred during the Covid-19 pandemic. Before Covid, settlement conferences were typically conducted in person in the magistrate judge's chambers, sometimes with one party bringing a proposed settlement agreement to the conference or drafting one before it ended. At a minimum, if a proposed settlement agreement was reached during a settlement conference, the parties typically would sign a term sheet in front of the undersigned magistrate judge before leaving, setting forth the material agreed upon terms. The world looks a lot different at the end of 2020 than it did at the beginning. The Court, and the parties, have necessarily adapted to the circumstances at hand. Settlement conferences are now largely conducted telephonically or by videoconference. Once a purported agreement is reached, the Court asks the parties to memorialize it and to then file a stipulation of dismissal. The Court does not necessarily see a settlement agreement or even a term sheet since the parties are not in chambers. In fact, parties and their counsel are often in different locations from each other, further complicating efforts to memorialize Court-supervised settlements. In theory, there is no reason why parties at a virtual settlement conference could not sign settlement agreements or term sheets contemporaneously during Covid times. In reality, everything in a Covid world seemingly takes longer and is more complicated. Settlement conferences are no exception.

The Court is left to scrutinize competing versions of a purported settlement, with one side overreaching and the other side omitting key terms. Thus, there is no agreement as to all material terms, and the motions to enforce the settlement agreement are denied.[4]

---

[4] Defendant states that if the Court determines no settlement was reached, Plaintiff will need to return funds already paid to him so the parties can return to the status quo that existed before Defendant believed a settlement had been reached. [Filing No. 43, at ECF p. 2.] That is true.

**IV.     Conclusion**

The Court and the parties concluded a settlement conference believing this litigation was settled.  However, the wildly differing proposed settlement terms the parties tendered to the Court reveal that no enforceable agreement exists.  Too much ambiguity remains on material terms to find that the parties reached a binding settlement.  Accordingly, both motions to enforce the settlement agreement [Filing No. 37; Filing No. 41] are denied.  In addition, for reasons stated above, the parties' motions to maintain documents under seal [Filing No. 39; Filing No. 42] are denied.  The Clerk is directed to unseal Filing Nos. 38, 38-1, 41, 41-1 and all attachments after 21 days absent a motion to reconsider, appeal, or further Court order.  The parties shall submit a proposed Case Management Plan within 28 days.

Date: 12/31/2020

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

---

Plaintiff must return any settlement funds he received, and Defendant must allow Plaintiff to return to employment.